## LAUGHLIN v. WILLIAMS et al.

No. 8704—Opinion Filed Nov. 4, 1919.

(Syllabus by the Court.)

### Guardian and Ward—Domicile of Ward.

The right to fix the residence of an incompetent person under guardianship in this state is regulated by section 3334, Rev. Laws 1910, under which the guardian of the person of such incompetent may fix the residence of his ward at any place within the state.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by W. T. Laughlin against Luther S. Williams and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Shartel, Dudley & Shartel, for plaintiff in error.

J. C. Wright, for defendants in error.

RAINEY, J. This case involves the title to the allotment of Parnoska Watson, a duly enrolled Creek Indian of the full blood, who died intestate in Seminole county on March 18, 1911. On April 3rd thereafter his heirs executed to one T. F. Boller a deed to his allotment of land, which deed was approved by the county court of Seminole county. On January 4, 1913, certain of Watson's heirs executed a deed to Luther S. Williams, which said deed was duly approved by the county court of Okfuskee county. Thereafter W. T. Laughlin, who traces his title through the deed approved by the county court of Seminole county, instituted this

suit against the defendants, who claim through the deed approved by the county court of Okfuskee county. Judgment was for the defendants, from which the plaintiff has appealed to this court.

The facts in the case, briefly, are that the deceased, Parnoska Watson, was, on February 11, 1909, a resident of Okfuskee county, Oklahoma, on which day the county court of said county adjudged him an incompetent, and apponted V. W. Miracle guardian of his person and estate. The guardian duly qualified. After this, Watson's habits seem to have been nomadic and he stayed at various places, the greater part of the time in Okfuskee county, but he made occasional visits to Seminole county. He died in Seminole county at the house of Lizzie Yarhola. This woman testified that she and Watson were engaged to be married and that one Wednesday night they went to the church house together and announced their intention, after which Watson went to her house to stay, and died within three or four days thereafter. She said they intended to be married, but had not set the date. The evidence further shows that Watson did not have any trunk or suit-case in her house or in Seminole county. There is no other evidence tending to show that he intended to make Seminole county his permanent residence.

The trial court found that V. W. Miracle was the duly appointed, qualified, and acting guardian of the said Parnoska Watson at the time of his death, and that said guardian had established and maintained the residence of the deceased in Okfuskee county up to the time of his death, and that he took sick and died while on a visit to Seminole county.

For reversal of the judgment it is asserted that an incompetent full-blood Indian, residing in one county in this state, under guardianship therein, may change his residence to another county in said state, and the county court of such county, upon his death, has jurisdiction to administer upon his estate. In support of this contention it is urged that this case comes within the rule announced in 14 Cyc. 848, subdivision 3, which is as follows:

"The mere fact that a person is of unsound mind does not necessarily preclude him from establishing his domicile, as the question must depend entirely upon the extent to which his reason has been impaired. In general it may be stated that but a comparatively slight degree of understanding is required in order that his action may be recognized."

The cases of Mowry v. Latham, 17 R. I. 480, 23 Atl. 13; Concord v. Rummey, 45 N. H. 423; Anderson v. Anderson, 42 Vt. 350, 1 Am. Rep. 334; and State v. Dodge County, 56 Wis. 79, 13 N. W. 680, are also cited in support of plaintiff's contention, although it is admitted that they are not directly in point. If the evidence showed that Watson intended to change his domicile, we might readily agree with counsel that his mind was not sufficiently impaired to prevent his so doing, but we cannot agree that the above-quoted rule has any application in this state, where the question of fixing the residence of minors, incompetents, and persons of unsound mind is regulated by statute.

Under sections 6538 and 6539, Rev. Laws 1910, county courts of this state are authorized to appoint guardians of the persons and estates of persons adjudged to be mentally incompetent to manage their property by complying with the procedure prescribed by said sections. Under section 3333 a guardian appointed by a court has power over the person and property of the ward, unless otherwise ordered. Section 3334 is as follows:

"A guardian of the person is charged with the custody of the ward, and must look to his support, health and education. He may fix the residence of the ward at any place within the state, but not elsewhere, without permission of the court."

It is unnecessary for us to determine what the weight of authority is in other jurisdictions as to the power of a guardian to fix the residence of his ward at any place within the state, for the above-quoted provision is clear and explicit and is controlling.

It appearing from the record that the alleged effort of Watson to change his domicile from Okfuskee county to Seminole county was without the knowledge or consent of his duly appointed, qualified, and acting guardian, the trial court was right in holding that his residence, at the time of his death, was in Okfuskee county, Oklahoma, and that the county court of said county was the only court having jurisdiction of the settlement of the estate of the deceased allottee. Therefore, under section 9, Act of May 27, 1908, 35 Stat. L. 312, said court was the only one authorized to approve the deed executed by his heirs. The judgment is affirmed.

All the Justices concur.